UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHALESA VERNELL FLOYD,

      Plaintiff,                      Case No. 2:20-cv-11839

                                          District Judge David M. Lawson

v.                                  Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

_____/

## REPORT AND RECOMMENDTION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

I.     Introduction

This is a Social Security case.  Plaintiff Shalesa Vernell Floyd ("Floyd") brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act").  Both parties have filed summary judgment motions (ECF Nos. 14, 15), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is RECOMMENDED that the Commissioner's for Summary Judgment (ECF No. 15) be GRANTED and that Floyd's Motion for Summary Judgment (ECF No. 14) be DENIED and that the Commissioner's determination be AFFIRMED.

## II.    Background

Floyd was 47 years old at the time of the December 16, 2016 alleged onset date.  (ECF No. 10, PageID.227).  She obtained a GED in 2008 and worked previously as a line production worker and medical assistant.  (*Id*., PageID.259). She alleges disability due to Spondylosis of the lumbar and lumbosacral spine, facet arthropathy, depression, a pain disorder, anxiety, Irritable Bowel Syndrome ("IBS"), right shoulder pain, gastroesophageal reflux disease ("GERD"), hypertension, and allergies.  (*Id*., PageID.257).

After Floyd's DIB application was denied at the initial level on September 12, 2018, she timely requested an administrative hearing, held August 23, 2019 before Administrative Law Judge ("ALJ") Michael F. Schmitz in Akron, Ohio (*Id*., PageID.93, 160).  Floyd, unrepresented at the time of the hearing,[1] testified by teleconference from Livonia, Michigan, as did Floyd's husband Walter Ralph

---

[1] Although Floyd was represented at the time her claim was filed, prior to the hearing, counsel filed a letter advising he was withdrawing from representing her.  (ECF No. 10, PageID.195)

2

Floyd, Jr. (*Id*., PageID.99-116, 116-119).  A Vocational Expert ("VE"), Helen M. Topcik, also testified.  (*Id*., PageID.119-125).

The ALJ commented that the relevant period under consideration from the alleged onset date of December 16, 2016 to the expiration of benefits on December 31, 2016 was a "pretty tight window" in which to establish disability. (*Id*., PageID.108).

Floyd testified that during the relevant period, she drove on a limited, as-needed basis.  (*Id*., PageID.100).   She experienced back pain radiating into the bilateral lower extremities.  (*Id*., PageID.109).  She underwent a steroid injection during the relevant period.  (*Id*.).  She rated her pain as an "eight or a nine" on a 10-point scale.  (*Id*.).  During the same period, she experienced migraine headaches up to three times a month.  (*Id*., PageID.110).  She took prescribed medication for the condition.  (*Id*.).  She weighed between 160 and 168 pounds. (*Id*., PageID.111).

During the relevant period, Floyd also experienced depression and anxiety. (*Id*.).  She experienced panic attacks lasting up to half a day on a twice-weekly basis.  (*Id*.).  On a typical day, she arose to get her son ready for school, took pain medication, performed household tasks for a few minutes, then prepared to go to work.  (*Id*., PageID.112-113).  In the evenings, she would prepare a simple meal for her family, help her son with his homework, and shower before retiring.  (*Id*.,

3

PageID.113).  She experienced the medication side effect of drowsiness.  (*Id*.,

PageID.114).  She could stand for up to 15 minutes, walk for up to 20, and lift up

to 20 pounds.  (*Id*., PageID.116).   Subsequent to the expiration of benefits, she

was hospitalized for a suicide attempt in April 2017.  (*Id*., PageID.112).

     In response to the ALJ's invitation to make a closing statement, Floyd

stated that she struggled with the decision to apply for DIB and that she "really

wanted to go back to work."  (*Id*., PageID.118).

     Floyd's husband testified that during the relevant period, Floyd experienced

frustration at her physical limitations and slept restlessly.  (*Id*., PageID.117).  Her

physical and psychological conditions were exacerbated by her mother's death.

(*Id*., PageID.117).

     On September 10, 2019, the ALJ found Floyd not disabled.  (Id.,

PageID.63-73).  On June 24, 2020, the Appeals Council denied review of the

administrative decision.  (Id., PageID.34).  Floyd timely filed for judicial review

of the final decision on August 10, 2020.

### III.     Framework for Disability Determinations (the Five Steps)

     Under the Act, DIB and SSI are available only for those who have a

"disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520. "The burden of proof is on the claimant throughout the first four steps. . . . If the analysis

5

reaches the fifth step without a finding that claimant is not disabled, the burden

transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14

F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Floyd was

not disabled under the Act between December 16 and December 31, 2016. (ECF

No. 10, PageID.63-73). At Step One, the ALJ found that Floyd had not engaged

in substantial gainful activity during the relevant period. (*Id*., PageID.65). At

Step Two, the ALJ found that she had the severe impairments of "lumbar

spondylosis and facet joint arthropathy with sciatica and radiculopathy, obesity,

depression, and anxiety disorder." (*Id*., PageID.66). He found that the conditions

of constipation, peptic ulcer disease, epigastric pain, GERD, hypertension,

bilateral fasciitis, lateral epicondylitis of the left elbow, and sinusitis were non-

severe. (*Id*.) At Step Three, the ALJ found that Floyd's impairments, whether

considered alone or in combination, did not meet or medically equal a listed

impairment. (*Id*., PageID.66).

The ALJ then assessed Floyd's residual functional capacity ("RFC"),

concluding that she was capable of performing light work with the following

additional limitations:

> [S]he could never climb ladders, scaffolds, or ropes; occasionally climb
> ramps or stairs, stoop, kneel, crouch and crawl; avoid concentrated

exposure to vibrations, and avoid all exposure to hazards such as unprotected heights and moving mechanical parts; can perform simple, routine, and repetitive tasks, but cannot perform tasks at a high-production rate pace such as assembly line work; can interact on occasional basis with supervisors, coworkers and the general public, but should be limited to superficial contact meaning no sales, arbitration, negotiation, conflict resolution or confrontation, no group, tandem or collaborative tasks, no management, direction or persuasion of others; and can respond appropriately to occasional changes in a routine work setting, as long as any such changes are easily explained and/or demonstrated in advance of their gradual implementation.

(*Id.*, PageID.67-68).

At Step Four, the ALJ found that Floyd was unable to perform any past relevant work.  (*Id.*, PageID.71).  Citing the VE's testimony, the ALJ found at Step Five that Floyd could perform the light, unskilled jobs of inspector (50,000 jobs in the national economy), clerical assistant (70,000), and mail room sorter (55,000).  (*Id.*, PageID.72, 124).  As a result, the ALJ concluded that Floyd was not disabled under the Act.  (*Id.*, PageID.72).

IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the

proper legal standards in making his or her decision, and whether the record

contains substantial evidence supporting that decision. *Tucker v. Comm'r of Soc.*

*Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve

conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of*

*Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017)(same).

An ALJ's factual findings must be supported by "substantial evidence." 42

U.S.C. § 405(g).  The Supreme Court has recently explained what that term

means:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence
> to support the agency's factual determinations.  And whatever the
> meaning of substantial in other contexts, the threshold for such
> evidentiary sufficiency is not high.  Substantial evidence, this Court has
> said, is more than a mere scintilla.  It means—and means only—such
> relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves

the judiciary's ability to review decisions by administrative agencies, but it does

not grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of*

*Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence

standard . . . presupposes that there is a zone of choice within which the

decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

V.    Analysis

Floyd moves not for an award of benefits, but seeks a remand on the grounds that the administrative hearing was held by video conference although she explicitly requested an in-person hearing.  (ECF No. 14, PageID.1038-1040).  On September 22, 2018, Floyd, through her then counsel, submitted her request for a hearing by an ALJ, and included a specific written objection to a video hearing.  (ECF No. 10, PageID.192-193).  Floyd notes that there is no explanation in the record as to why the hearing was held over video conference despite her request, nor did the ALJ address the issue of an in-person hearing.  (ECF No. 14, PageID.1038-1040).  She argues that her right to an in-person hearing was violated and that she was prejudiced by the Commissioner's failure.  (*Id.*).

A.    The Video Conference Hearing

On May 16, 2019, the SSA sent Floyd a notice of hearing directing her to appear at its Livonia, Michigan office for a hearing on August 23, 2019.  (ECF No. 10, PageID.196).  When she appeared on that date, the ALJ informed her that it was a video hearing, and that he was appearing via video from the Akron, Ohio Hearing Office.  (*Id.*, PageID.95).  Helen M. Topcik, the Vocational Expert, appeared by telephone.  (*Id.*).  Floyd argues that the Commissioner erred by disregarding her written objection to a video hearing, and that she was deprived of due process and a fair hearing.  (ECF No. 14, PageID.1038-1039).

10

In response, the Commissioner concedes that conducting a video hearing despite Floyd's written objection was error under 20 C.F.R. § 404.936(d). However, the Commissioner says that the error was harmless and therefore Floyd is not entitled to a remand.  (ECF No. 15, PageID.1045-1046).

20 C.F.R. § 404.936(b) provides that hearings may be held either in person or by videoconference.  The procedure for objecting to a video hearing is set forth in § 404.936(d):

> (d) Objecting to appearing by video teleconferencing.  Prior to scheduling your hearing, we will notify you that we may schedule you to appear by video teleconferencing.  If you object to appearing by video teleconferencing, you must notify us in writing within 30 days after the date you receive the notice.  If you notify us within that time period and your residence does not change while your request for hearing is pending, we will set your hearing for a time and place at which you may make your appearance before the administrative law judge in person.

Floyd timely objected to a video hearing, and as the Commissioner concedes, proceeding by videoconferencing was error under this Regulation.  The questions in this case are (1) is the error subject to a harmless error rule where the claimant must show prejudice, and (2) if so, has Floyd shown she was prejudiced?

With regard to the first question, whether the error in this case is framed as a violation of a Regulation, the denial of the right to a full and fair hearing, or the denial of due process, it is harmless unless Floyd can show that she was prejudiced by having the hearing by videoconference.  The Sixth Circuit has noted

that "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).  Nonetheless, in *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009), the Sixth Circuit stated, "[g]enerally, however, we review decisions of administrative agencies for harmless error." (citing *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001)).  In cases where an agency violates its own regulations, the Court went on to say, "[a]ccordingly, if an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'"  *Id.* (quoting *Connor v. United States Civil Serv. Comm'n,* 721 F.2d 1054, 1056 (6th Cir. 1983)).  In *Connor* the Court held that "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."  *Id.* at 1056.

A due process violation is also subject to a harmless error analysis.  "[T]o demonstrate a due process violation, there 'must be a showing of prejudice.' "  *Glenn v. Comm'r of Soc. Sec.*, No. 12-11433, 2013 WL 3466964, at *16 (E.D. Mich. July 10, 2013) (Ludington, J.) (quoting *Carter v. Astrue,* No. 3:10-cv-22-J-TEM, 2011 WL 4502024, at *7 (M.D. Fla. Sept. 28, 2011) (quoting *Gordon v.*

*Astrue,* 249 Fed. Appx. 810, 813 (11th Cir. 2007)); *see also Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.").

In answer to the second question, Floyd has not shown that she was prejudiced or deprived of substantial rights as a result of the hearing being conducted by videoconference. Similarly to an in-person hearing, the witnesses were placed under oath. (ECF No. 10, PageID.99, 116, 119). Floyd acknowledged that she received the case file with exhibits, and that she did not object to their relevance. She stated that she had no additional documents to offer, after confirming that her educational records had been provided. (*Id.*, PageID.97-98). Floyd was given the opportunity to ask questions of her husband, after he had been examined by the ALJ. (*Id.*, PageID.118). The ALJ offered her the opportunity "to let me know if there's anything else at all that you think we need to know about your case that I haven't given you a chance to talk about yet," and she in fact made a further statement. (*Id.*, PageID.118-119). Floyd was given the opportunity to question the VE about her qualifications and to object to the VE being qualified as an expert witness. (*Id.*, PageID.121). At the close of the VE's

testimony, the ALJ asked Floyd if she had any questions about the role of the VE. (*Id*., PageID.125).

Moreover, as the Commissioner points out, medical records are generally the most critical pieces of evidence in a disability case. *See Matthews v. Eldridge*, 424 U.S. 319, 333-334 (1976) (a "decision whether to discontinue disability benefits will turn, in most cases, upon 'routine, standard, and unbiased medical reports by physician specialists.' ") (quoting *Richardson v. Perales*, 402 U.S. 389, 404 (1971)). Here, the medical records were admitted without objection.

Thus, even though the hearing was held by videoconference, Floyd was afforded all of her substantial procedural rights. *See Henry v. Colvin*, 561 F. App'x 55, 57–58 (2d Cir. 2014) ("However, even assuming, without deciding, that the vocational expert's testimony by telephone was inconsistent with due process and SSA regulations as they existed at the time of Henry's 2009 remand hearing, the error was harmless"); *Brown v. Comm'r of Soc. Sec.*, No. 6:14-cv-2051-Orl-41TBS, 2015 WL 13741553, at *7 (M.D. Fla. Nov. 24, 2015), *report and recommendation adopted*, 2016 WL 1178555 (M.D. Fla. March 28, 2016), *aff'd* 677 Fed. App'x 529 (11th Cir. 2017) ("Plaintiff has not shown that his due process rights were violated because he has not shown, or even argued, that any prejudice resulted from the hearing being held by video teleconferencing."); *Fall v. Gonzales*, 218 F. App'x 385, 389, 2007 WL 627380, at *4 (6th Cir. 2007)

("[T]he record provides no indication petitioner was prejudiced by the video conferencing.").

In terms of any specific allegation of prejudice, Floyd points to the VE's statement at the beginning of her testimony that she was having trouble hearing the ALJ.  After the VE answered a few preliminary questions, she stated, "Judge, I'm having a very hard time hearing you."  (ECF No. 10, PageID.121).  She added, "Yeah, I can hear your voice, but it's not clear and I – there's something, it just sort of, it sounds a little bit jumbled."  (*Id*.).  After the speaker and the microphone were adjusted, the VE stated that she could hear the ALJ "much better."  (*Id*., PageID.122).  Any brief problem the VE had in hearing the ALJ was corrected at the very beginning of her testimony, and there is nothing to indicate that the problem persisted.  Her testimony continued, and she was able to understand and respond to all of the ALJ's questions, including his hypothetical question.  (*Id.*, PageID.122-125).

There was an earlier portion of the hearing, when Floyd was describing her past employment, where the ALJ asked the VE if she needed "any additional information about Mrs. Floyd's vocational background before we move onto the medical aspects of her testimony."  (ECF No. 10, PageID.107).  The VE responded, "Okay, I think I got it.  I'm having a little trouble hearing because I'm listening to the people.  Can the phone be moved a little farther away from that?"

(*Id.*).  The VE then confirmed that the only two jobs during the relevant period were automobile assembler and medical assistant.  The ALJ also clarified the lifting requirements for the medical assistant job.  (*Id.*, PageID.107-108).  This exchange shows that the VE did not miss any relevant information, and Floyd was not prejudiced by the VE temporarily having "a little trouble hearing."[2]

Because Floyd has shown neither prejudice nor denial of a substantial right as the result of the Commissioner's violation of 20 C.F.R. § 404.936(d), the error is harmless, and she is not entitled to a remand on this basis.

### B.    The Subjective Claims of Limitation

After making the above-discussed argument, Floyd's attorney ends his brief as follows:

> It is absolutely clear that Ms. Floyd suffers from numerous underlying medical conditions which are fully documented in the medical record. The one question to be addressed is since the objective medical evidence confirms the severity of the alleged pain arising out of the conditions and the objectively established medical condition are of such severity that it can be reasonably expected to produce the alleged disabling pain. *Duncan v Secretary of Health and Human Services*, 801 F. 2d 847 (6th Cir. 1986); also 20 CFR 404.1529a.

---

[2]    In addition, the Commissioner correctly points out that the ALJ found in Floyd's favor at Step Four of the sequential evaluation, finding that Floyd could not perform her past relevant work. (ECF No. 15, PageID.1049, fn. 2).  Thus, any error at Step Four would be harmless. *See Emigh v. Comm'r of Soc. Sec.*, No. 3:14-CV-36, 2015 WL 545833, *21 (N.D.W. Va., Feb. 10, 2015) ("any error at step four of the sequential evaluation process as alleged by Plaintiff would be harmless as the ALJ found in Plaintiff's favor and then proceed to the fifth step of the sequential evaluation process.").

16

Claimant contends that applying this test to the medical evidence supports the claimant's statements regarding difficulties which she experiences, and those difficulties would prevent her from engaging in any work activity.

(ECF No. 14, PageID.1040-1041).

It is unclear whether Floyd is attempting to establish a separate basis for remand.  And this alternative argument (assuming that it could be characterized as such) fails for multiple reasons.  She fails to cite one page of the medical transcript that would contradict the ALJ's findings or identify an error in the administrative determination.  *See Thomas v. Halter*, 131 F. Supp. 2d 942, 945 (E.D. Mich. 2001) ("Plaintiff should not expect the Court to search the ALJ's ruling in support of Plaintiff's argument; *i.e.*, he should not anticipate that the Court will do what he could and should have done for himself. . . . '[J]udges are not like pigs, hunting for truffles buried in' " briefs) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)).

Citing *Duncan*, Floyd appears to argue that her allegations of limitation were improperly discounted.  *See id.,* 801 F.2d at 853 (claims of limitation can be credited where "the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain").[3]   But

---

[3] However, the court in *Duncan* held that the ALJ adequately evaluated then rejected the subjective claims of disabling pain.  *Id.,* 801 F.2d at 853

even such a liberal reading does not rescue her argument.  In support of his

finding that Floyd's claims were not "fully consistent with the evidence," the ALJ

noted as to the allegations of physical limitation:

> [A] physical examination performed in August of 2016 revealed that
> the claimant was alert, cooperative, in no acute distress, her gait was
> normal, there was full lumbar spine range of motion . . . . In addition,
> the claimant had a mostly limited and conservative treatment history
> for her physical health issues prior to the date last insured, including
> injections and pain medications.

(ECF No. 10, PageID.70).  As to the alleged psychological limitations for

the relevant period the ALJ determined:

> [S]he had a very limited treatment history prior to the date last insured,
> without evidence of psychiatric hospitalization in the record during this
> period, and testified that she was not seeing a psychiatrist.
> Additionally, the claimant reported mostly mild to moderate level
> symptoms to providers at the Henry Ford Health System, without
> evidence of hallucinations, delusions, obsessions, compulsions,
> cognitive disorder, current suicidal/homicidal ideation, or other serious
> issues . . . .  Moreover, the claimant engaged in a variety of daily
> activities that indicate a greater level of functioning than alleged.  For
> example, she testified that on a typical day prior to December of 2016,
> she woke and made her son breakfast, walked him to the bus stop,
> performed household chores, lied down in bed, went to work, and came
> home to care for her son, including making dinner and helping with
> homework (hearing testimony).  Thus, there are no indications in the
> medical record prior to the date last insured of limitations beyond the
> performance of light level work with the non-exertional restrictions
> listed above.

(*Id*.).

The undersigned notes that without more, Floyd's hearing testimony

that she was able to cook, perform household chores, care for her son, and

perform work activity during the relevant period supports the non-disability finding.  (*Id.*, PageID.113).  Because the ALJ provided a lengthy rationale for his findings and Floyd has not identified any error in the ALJ's assessment of the subjective complaints, the administrative findings are entitled to the deference by this Court.  *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (An ALJ's assessment of claimant's allegations entitled to "great weight").

### C.    In Sum

The record shows that at one point or another Floyd experienced some significant degree of work-related limitation.  However, she was faced with a tall task in establishing that she became disabled during the narrow, 15-day period between December 16 and December 31, 2016, and she has failed to identify an error in the ALJ's reasoning.  Because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Blakley, supra,* 581 F.3d at 406.

### VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the Commissioner's motion (ECF No. 15) be GRANTED and that Floyd's motion

(ECF No. 14) be DENIED and that the Commissioner's determination be

AFFIRMED.

Dated: January 28, 2022                         s/Kimberly G. Altman
Detroit, Michigan                               KIMBERLY G. ALTMAN
                                                United States Magistrate Judge


## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise

some issues but fail to raise others with specificity will not preserve all the

objections a party might have to this Report and Recommendation.  *Willis v. Sec'y*

*of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local

Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc.  If the Court determines that any objections

are without merit, it may rule without awaiting the response.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First-Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on January 28, 2022.


s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager